UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| L.A., a minor child, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-596-MPB-TAB |
| | ) |
| MIKE BRAUN, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**Declaration of Rai Eury**

Rai Eury, being duly sworn upon their oath, says that:

1. I am an adult resident of the State of Ohio.

2. I am the parent of L.A., the plaintiff in this case, and I am her custodian and legal guardian. She lives with me and I am serving as her next friend in this litigation.

3. I am also a licensed social worker and therapist.

4. L.A. is currently 15 years old.

5. L.A. was born in Indiana and therefore has an Indiana birth certificate.

6. Although L.A.'s sex assigned at birth was male, she has identified as a girl since she was 3 years of age and has consistently identified as a girl ever since.

7. Beginning when she was that 3 years old, she insisted on wearing dresses and rejected being called by her birth name, which was a masculine name.

[1]

8. When she was 4 or 5 years of age, she began to see a therapist and shortly thereafter she was diagnosed with gender dysphoria.

9. At a young age she demonstrated obvious symptoms of gender dysphoria, such as anxiety, depression, and discomfort with the sex she was assigned at birth.

10. Going to therapy as well as being able to dress as a girl and to use a non-masculine name certainly served to lessen but not to eliminate the symptoms of the gender dysphoria caused by the disconnect between her birth-assigned sex and her gender identity.

11. When she was 8 years old, she was granted a change of name by a court in Ohio so that her first name was legally changed to a name commonly associated with girls and that is the only first name by which she is known.

12. The decision to obtain this name change was entirely L.A.'s as she insisted that she wanted and needed her first name to be changed as she is a girl.

13. As L.A. has aged, she had a great deal of stress, anxiety, and depression about the prospect of going through male puberty.

14. Therefore, in consultation with her treating medical and mental health professionals, in 2021 she was prescribed and began to receive a puberty blocker that prevented her body from entering male puberty with its attendant physical changes.

15. In December of 2023, again in consultation with her treating professionals, in order to begin female puberty in line with her cisgender peers, she was prescribed and began to receive estradiol—estrogen—as part of her gender-affirming care.

16. She has consistently received estradiol since that time. This has caused her to develop what I believe are well recognized as typically feminine features, including the development of breasts, the softening of her skin, and the redistribution of fat consistent with that on the body of an adolescent female.

17. Becoming more feminine in appearance has reduced the anxiety and depression that has characterized L.A.'s gender dysphoria, although it has not eliminated it.

18. L.A. physically appears to be a teenage girl in all respects.

19. She is known by her friends, family, acquaintances, and the world at large as an adolescent girl. Many persons with whom she interacts regularly do not know that she is a transgender girl.

20. Although L.A. received a formal name change from an Ohio court, since she was born in Indiana, she could only receive a gender-marker change to her birth certificate through an Indiana judicial proceeding.

21. Obtaining a gender-marker change so that her birth certificate matches her gender identity is extremely important for L.A. as it reaffirms her identity as a young woman and L.A. was eager to obtain the gender-marker change as a key element of her transition.

22.     On March 14, 2025, an Indiana trial court granted L.A. a gender-marker change on her birth certificate from male to female. The order also recognizes that her current legal name is L.A., not the typically male name that she was given at birth. I have attached a redacted copy of the order.

23.     After receiving the order, L.A.'s father presented it to the county health department in the county where L.A. was born but the staff there were unable to change the gender marker because of the Governor's Executive Order that is challenged in this case.

24.     When my current spouse and I learned the position of the county health department, my spouse contacted the Indiana State Department of Health and was informed that gender-marker changes ordered by courts were not being processed because of the Governor's Executive Order.

25.     This is extremely problematic for many reasons.

26.     I believe it is clear that a birth certificate is a fundamentally important identification document that a person uses to establish their identity throughout their lifetime and is used for a wide variety of purposes, including proof of citizenship and age; obtaining a driver's license; joining the military; opening bank accounts; enrolling in school; replacing a social security card; applying for government benefits; and, depending on the state, obtaining a marriage license.

[4]

27. The bottom line is there are many situations in which a person has to present their birth certificate.

28. L.A. is female in appearance and will become more so as she continues with her hormone replacement therapy and matures into a post-pubertal woman.

29. Having to present a birth certificate that identifies L.A. as "male" will immediately create a risk of "outing" her as transgender to all who view the birth certificate, or may result in others questioning whether her birth certificate is authentic or genuine as she has a female name and appears in all respects to be a girl and will only appear more feminine in the future.

30. Each of these eventualities is extremely disturbing to L.A. as both will require her to divulge her transgender status to perfect strangers at the license branch, for instance, or in other circumstances where she will have to present her birth certificate.

31. The fact that her gender marker is not changed on the birth certificate will lead to predictable difficulties in obtaining benefits and services for which presentation of a birth certificate is a prerequisite.

32. The prospect of strangers learning this intimate information is extremely disturbing to L.A.

33. Although L.A. has begun to advocate around transgender issues and has, at times, identified herself to others as transgender, she certainly does not make this disclosure to strangers in the normal course of her life and wants to be able to control to whom she

[5]

discloses her transgender status. She does not want to be forced to disclose this in situations where she is put at risk of harm, which is certainly possible in those situations where she will be required to present a birth certificate that does not match her gender identity and appearance.

34. As a social worker who provides counseling and has worked with people who are transgender or are gender diverse, I am aware that these people are subject to elevated risks of violence and other harms.

35. L.A.'s gender dysphoria, which she still suffers from, has been ameliorated as she has been able to identify and appear as the girl that she is.

36. But the knowledge that no matter what she does she will never be able to erase the fact that her birth certificate identifies her as male is extremely disturbing to her and being saddled with a primary identification document—the birth certificate—that fails to match her gender identity is extremely distressing.

37. Even if others do not know that her gender marker on her birth certificate is male, she will know, and this knowledge and the knowledge that no matter what she does she will not be recognized as female, will be a continuing source of serious harm and distress to her.

38. However, when persons do learn that she was not born a female, as persons inevitably will, she will be exposed to the discrimination and the elevated risk of harm and violence that all transgender people face.

[6]

## Verification

I verify under the penalties for perjury that the foregoing representations are true.

Executed on: 4/23/2025 | 1:53 PM EDT
DATE

Rai Eury

Prepared by:

Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202

[7]

FILED
March 14, 2025
CLERK OF THE COURT
MARION COUNTY
TW

STATE OF INDIANA

COUNTY OF MARION

IN RE THE MATTER OF:

L____ A____,
A minor

IN THE MARION CIRCUIT COURT

Case number. _____

### ORDER ON VERIFIED PETITION FOR CHANGE OF GENDER MARKER

The Court, having reviewed the Verified Petition for Change of Gender Marker of a Minor and the evidence presented at the hearing finds:

1. The child's current legal name is L_____ A____
2. The child's previous legal name was _____
3. It is the child's best interest to have their gender marker changed.
4. The child's date of birth is _____
5. The sex/gender listed on the child's birth certificate is male.

**IT IS THEREFORE ORDERED** that the Petition for Change of Gender of Minor is **GRANTED**, and

**The child's legal gender is changed to female.**

**IT IS FURTHER ORDERED** that all agencies, institutions and offices issuing the minor identity documents or holding records related to the minor are directed to amend such documents consistent with this order, including but not limited to the Indiana State Department of Health and its subdivisions.

ORDERED  3/14/2025

Brent Wilson, Magistrate
Circuit Court

