UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| L.A., a minor child, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-596-MPB-TAB |
| ) | |
| MIKE BRAUN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Memorandum in Support of Motion to Certify Case as a Class Action**

I.  **Introduction**

L.A. is a transgender girl who has received an order from an Indiana court that changes the gender marker on her birth certificate from male to female. (Dkt. 18-1 ¶¶ 2, 6; Attachment to 18-1). However, Governor Braun has issued Executive Order 25-36, as implemented by defendant Ervin, which ends the prior Indiana practice of changing gender markers for transgender and other gender diverse persons who have obtained court orders for the change. (Dkt. 18-2, Dkt. 18-3). L.A. is therefore not able to obtain a change of the gender marker on her birth certificate. (Dkt. 18-1 ¶¶ 22-24; Dkt. 18-4 ¶¶ 4-5). However, the defendants' actions not only prevent L.A. from obtaining the gender marker change prevent many people, both now and in the future, from obtaining the change. L.A. has sought injunctive and declaratory relief for herself and a class of people similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b)(2) with the class defined as:

[1]

> all persons who now or in the future are unable to obtain a change in the gender marker on their Indiana birth certificate because of Executive Order 25-36 and/or any subsequent similar Executive Orders.

The proposed class meets all requirements for the Rule 23(a) and (b)(2) and should be certified.

## II. The numerosity requirement is met

The first requirement for class certification, as set out in Fed. R. Civ. P. 23(a)(1), is that "the class is so numerous that joinder of all members is impracticable."[1] "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 330 (1980). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1)." *Valenti v. Hartford City, Indiana*, No. 1:15-cv-63-TLS, 2016 WL 5662097 at *3 (N.D. Ind. Oct. 3, 2016) (citing *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1987)). And "the court may make common sense assumptions to determine numerosity." *Id.* (citing *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008)). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock*

---

[1] In addition to the explicit requirements of Rule 23(a) and (b), the Seventh Circuit "and other courts have long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Here, class membership is clear as it depends on persons who, but for the Executive Order, would be able to obtain changes to their gender markers.

*Island Co.*, 850 F.3d 849, 859 (7th Cir. 2017) (citations omitted). Moreover, "[t]he general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975).

A "liberal instruction" of Rule 23(a)(1) is not necessary here. L.A. has submitted the declaration of Kristen Matha who is the Project Director of the LGBTQ+ Project at Indiana Legal Services, which among other things, assists transgender and gender-diverse persons or their parents in obtaining gender marker changes to birth certificates. (Dkt. 18-5 ¶¶ 2-8. This assistance may take the form of direct representation in court or supplying legal forms so that the person may proceed *pro se.* (*Id.* ¶ 6). From March 1, 2024 through the end of February of 2025, the Project represented 38 persons, all of whom were transgender or gender diverse or the parents of transgender and gender diverse minors, in obtaining court-ordered gender-marker changes. (*Id.* ¶ 7). And, from March 1, 2024 until the end of March of 2025, it provided forms to obtain court-ordered gender marker changes to more than 400 transgender or gender-diverse people or the parents of transgender and gender-diverse minors in order that gender markers could be changed on birth certificates. (*Id.* ¶¶ 8-9). Prior to the Executive Order challenged in this case, therefore, a monthly average of more than 36 transgender, gender-diverse people, and parent(s) of transgender or gender-diverse minors sought assistance with court-ordered gender marker changes. (*Id.* ¶ 9). Prior to the Executive Order, once a trial court entered

[3]

an order changing the gender marker and the order was presented to the Indiana Department of Health or a local health department, a new birth certificate with the changed gender marker would issue. (*Id.* ¶ 10). Without the change effected by the Executive Order, Ms. Matha believes that the above number of client applicants who are transgender, gender-diverse, or the parent(s) of transgender or gender-diverse minors, seeking court-ordered changes to gender markers so birth certificates could be changed, would have continued. (*Id.* ¶¶ 11-12).

The frequency of transgender and gender diverse persons seeking changes in the gender markers is not surprising given the large number of such persons living in Indiana. It is estimated that over 1.6 million people over the age of 13 in the United Sates identify in transgender, including slightly fewer than 30,000 people over the age of 13 in Indiana. (18-6 at 2, 4).[2] Given the necessity of possessing valid identification documents in today's world, these approximately 30,000 people will need to have a birth certificate, the most basic identification document, that accurately matches their gender identity and presentation. Numerosity is met "where the class at issue is 'self-evidently large.'" *Berger v. Property I.D. Corp.*, 2008 WL. 11334980, at *3 (C.D. Cal. Apr. 28, 2008) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). This class is certainly "self-evidently" large.

---

[2]  The class also includes persons, like L.A., born in Indiana but who are no longer Indiana residents.

In determining whether the numerosity requirement is met, the Court should also consider that the class includes future class members and draw an inference that joinder is impracticable. *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986). The existence of "prospective class members does not cut against class certification; indeed, their presence may have a tendency to make certification more, not less, likely. Prospective class members are difficult to count, and so courts generally relax the numerosity requirement 'due to the difficulty in determining the number and identity of their future claimants.'" *Hizer v. Pulaski. Co, Indiana*, 2017 WL 3977004, at *6 (N.D. Ind. Sept. 11, 2017) (quoting Newberg, *et al*, *Newberg and Rubenstein on Class Actions* § 3.15 (5th ed. 2012)). "Regardless of their number, the joinder of future [class members] is inherently impracticable." *Rosario v. Cook Cnty.*, 101 F.R.D. 659, 661 (N.D. Ill. 2016). Of course, the injunctive and declaratory relief sought will benefit the future members of the class, and "[s]uch future members make joinder inherently impracticable because there is no way to know who they will be." *Olson v. Brown*, 284 F.R.D. 398, 408 (N.D. Ind. 2012).

### III.  The commonality requirement is met

Rule 23(a)(2) requires that there be present "questions of law or fact common to the class." Commonality requires that there is "a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke*.*" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Distinctions in the

facts of individual class members' claims do not preclude a finding that the commonality requirement is met. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). Rather "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). And a common nucleus of fact is typically found where defendants have engaged in standardized conduct toward members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

In this case all class members are confronted by the Governor's Executive Order and defendant Ervin's implementation of it which, together, prevent them from obtaining a gender-marker change. They are all faced with the same injury. They are therefore united by the common legal question of whether the Executive Order and its implementation violates equal protection and due process. Determination of this question "will resolve an issue that is central" to each class member. *Wal-Mart*, 564 U.S. at 350.

"[I]n a civil-rights suit, [] commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). That is the case here and commonality is met.

**IV.    Plaintiff's claims are typical of those of the class**

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the representative party be typical of those of the class. As the Supreme Court has noted, this requirement is intertwined with the commonality requirement:

> [t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so inter-related that the interests of the class-members will be fairly and adequately protected in their absence.

*Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). In order for this requirement to be met, there need not be identity of interest between the named plaintiff and the class they seek to represent; rather, there need only be "sufficient homogeneity of interests." *Sosna v. Iowa*, 419 U.S. 393, 403 n.13 (1975). Another view is that typicality requires that the claims of the named plaintiff "not be 'significantly antagonistic' to the claims of the proposed class." *Eatinger v. BP America Production Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (footnote and citation omitted). The fundamental inquiry is whether all members of the class would benefit from a judgment favorable to the plaintiffs. *See Meisberger v. Donahue*, 245 F.R.D. 627, 631 (S.D. Ind. 2007).

L.A. and the class are all confronted with the exact same factual circumstance, the inability to obtain a gender-marker change, and the exact same constitutional claims. Their "claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). All putative class members, including future class members, are affected by the Executive Order and its

implementation by defendant Ervin. All would benefit from a favorable judgment in this case. L.A.'s claims are typical of those of the class she seeks to represent.

### VI. The plaintiff is an adequate representative of the class

The adequacy requirement of Rule 23(a)(4) similarly "tend[s] to merge" with the commonality and typicality requirements, although it "also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 157 n.13. It requires simply that the class representative's interests be such that she will vigorously pursue the class's interests as well as her own, see *Hohman v. Packard Instr. Co.*, 399 F.2d 711, 714 (7th Cir. 1968), a standard that is met when the class representative is "'part of the class and possess[es] the same interest and suffer[s] the same injury as the class members,'" *Conrad v. Boiron, Inc.*, 869 F.3d 536, 539 (7th Cir. 2017) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)). Additionally, "the court must be satisfied that the plaintiff will keep the interests of the entire class at the forefront." *Id.*

L.A. is represented by counsel skilled and experienced in this type of litigation. "[T]here is no conflict between [L.A.] and the members of the class," as she is seeking the same relief for herself and the class. *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). L.A. therefore has an obvious "stake in these proceedings that will insure diligent and thorough prosecution of the litigation." *Hizer*, 2017 WL 3977004, at *7 (internal quotation and citation omitted). L.A. has no interests adverse to those of the class and is

an adequate class representative and her counsel are appropriate to be appointed as counsel for the class.

## V.     The further requirements of Rule 23(b)(2) are met

The final requirement for certification of the class is stated in Rule 23(b)(2) of the Federal Rules of Civil Procedure. In order to meet these requirement parties opposing the class must have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b). This is not a difficult standard to meet in a case such as this one, where defendants have imposed uniform policy on the class. After all, "Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits. Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria." *Tyson v. Grant County Sheriff*, 2007 WL 1395563 at *5 (N.D. Ind. May 9, 2007) (internal quotation and citation omitted). Consequently, "[t]he requirements of the rule are . . . given a liberal construction in civil rights suits." *John Does 1-100 v. Boyd*, 613 F. Supp. 1514, 1528 (D. Minn. 1985) (citing *Coley v. Clinton*, 635 F.2d 1364, 1379 (8th Cir. 1980)).

Rule "23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of*

[9]

*Chicago*, 797 F.3d 426, 441 (7th Cir. 2015). This is, of course, precisely what L.A. is attempting to do here – obtain declaratory and injunctive relief that is designed to benefit the whole class. The requirements of Rule 23(b)(2) are therefore met.

**VII.   Conclusion**

For the above reasons, this case should be certified as a class action pursuant to Rule 23(a) and (b)(2) with the class as defined above.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org

Attorneys for Plaintiff and the Putative Class
