UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| L. A., | ) | |
| JANE DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00596-MPB-TAB |
| | ) | |
| MIKE BRAUN, | ) | |
| LARRY K. ERVIN, | ) | |
| | ) | |
| Defendants. | ) | |


**ORDER ON PLAINTIFF JANE DOE'S
MOTION TO PROCEED UNDER PSEUDONYM**

**I.     Introduction**

Plaintiff Jane Doe is a transgender adult who identifies as female.  Plaintiff is unable to

obtain a gender marker change to "female" on her Indiana birth certificate due to Defendant

Governor Mike Braun's Executive Order 25-36.  Concerned that she will be subject to

harassment and violence if her name is revealed publicly, Plaintiff requests to proceed under the

pseudonym Jane Doe during the pendency of this class action lawsuit challenging the

constitutionality of Braun's executive order.  [Filing No. 37.]  In opposing Plaintiff's motion,

Defendants Braun and Larry K. Ervin argue that her transgender identity is not a secret, and that

Plaintiff is merely attempting to conceal her status as a Plaintiff in this lawsuit.  The Seventh

Circuit only permits a party to proceed anonymously in exceptional circumstances, and Plaintiff

has not demonstrated that an exception applies to this case.  Therefore, for reasons explained

below, Plaintiff's motion is denied.

## II.    Background

Plaintiff L.A.[1] is a 15-year-old transgender individual who has identified as female since a very young age.  [Filing No. 1.]  On March 28, 2025, L.A. initiated this lawsuit against Defendants on behalf of herself and a putative class for violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.  [Filing No. 1, at ECF p. 17-18.]  On May 26, 2025, L.A. amended her complaint to include Plaintiff Jane Doe. [Filing No. 34, at ECF p. 1.]  L.A. and Jane Doe's amended complaint challenges Executive Order 25-36.  The amended complaint alleges that Braun's executive order announced that it is the official policy of Indiana to recognize the sex of a person is fixed at birth and prohibited state agencies from maintaining any statements, policies, regulations, forms, communications, or other messages that promote or otherwise inculcate "modern gender ideology."  [Filing No. 34, at ECF p. 2.]  The amended complaint further alleges that, due to this executive order, the Indiana State Registrar will not process gender marker changes, even if a state court has ordered the change. [Filing No. 34, at ECF p. 2.]

Plaintiff Jane Doe supports her motion to proceed under the pseudonym with a declaration stating that she realizes Defendants and their lawyers will know her identity, but she wishes to secure her privacy in this litigation "to the greatest extent possible."  [Filing No. 37-1, at ECF p. 1.]  Plaintiff further states: "I am aware that transgender persons are subject to harassment and violence and I believe if my name is revealed publicly that I may be subject to either or both."  [Filing No. 37-1, at ECF p. 2.]  Defendants oppose the motion.  [Filing No. 50.]

---

[1] L.A.'s ability to proceed anonymously in this lawsuit is not in dispute, as she is a minor.

**III.    Discussion**

The Federal Rules of Civil Procedure require that all parties to a lawsuit be named.  *See* Fed. R. Civ. P. 10(a) (providing that the "title of the complaint must name all the parties"); Fed. R. Civ. P. 17(a) (providing that "[e]very action shall be prosecuted in the name of the real party in interest.").  There is a strong presumption in favor of transparency in judicial proceedings. *See, e.g., Doe v. City of Chicago*, 360 F.3d 667, 669-70 (7th Cir. 2004) ("Judicial proceedings are supposed to be open . . . in order to enable the proceedings to be monitored by the public.  The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity.").  However, the Seventh Circuit recognizes that judges have discretion to permit pseudonymous litigation when the balance of harms justifies it. *Doe v. Trustees of Indiana University*, 101 F.4th 485, 492 (7th Cir. 2024).  "A substantial risk of harm—either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court—may justify anonymity." *Id*. at 491.  *See also Doe v. Young*, No. 24-2871, 2025 WL 927320, at *2 (7th Cir. Mar. 27, 2025) (unpublished) ("Anonymity can be justified by a minor's status, a substantial risk of harm, or improper retaliation from a third party.").

Plaintiff cites a decision from this Court that adopted a six-factor test before granting a request to proceed under an anonymous name to several sex offenders challenging a Marion County ordinance.  *See Does v. City of Indianapolis*, No. 1:06-cv-865-RLY-WTL, 2006 WL 2289187, at *1-2 (S.D. Ind. Aug. 7, 2006).  Plaintiff argues that application of the six-factor test demonstrates that she should be allowed to proceed under a pseudonym.  [Filing No. 42, at ECF p. 4.]  However, more recently, the Seventh Circuit explicitly rejected this multifactor approach.

In *Doe v. Trustees of Indiana University*, 101 F.4th at 491, the Seventh Circuit evaluated this district's decision to refer to the plaintiff in that case as "John Doe."  The Seventh Circuit stressed: "The magistrate judge's brief opinion mentions a multifactor approach drawn from opinions of a few district judges, *an approach that has not been adopted by this circuit*." (Emphasis added).  The Seventh Circuit further emphasized that the magistrate judge "did not find that Doe faces a risk of physical harm or retaliation, and could not properly have done so without an evidentiary hearing."  101 F.4th at 492.  The Seventh Circuit noted that it has rejected the multifactor approach in a recent unpublished case as well:

> Lastly, Doe relies on an out-of-circuit and a district court decision to advocate for a multifactor approach for anonymity decisions.  *See, e.g., James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) (highlighting factors relevant to anonymity decisions, including whether the matter is of a sensitive and highly personal nature); *Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896 (S.D. Ind. 2022) (recognizing similar multifactor approach). But we have already rejected this approach and held that many of the factors are irrelevant to the determination whether anonymity is appropriate.  *Indiana Univ.*, 101 F.4th at 492.

*Young*, No. 24-2871, 2025 WL 927320, at *3.

Thus, the question is merely whether the adult Plaintiff here can justify the request to proceed anonymously in this litigation due to either a substantial risk of harm or improper retaliation from a third party.  Plaintiff argues that disclosing her actual name would expose her to harm because she is concerned she will face "at the least, harassment." [Filing No. 42, at ECF p. 5.]  In her declaration accompanying the motion to proceed under a pseudonym, Plaintiff notes that an internet search of just her name will produce a Facebook page with her photograph, as well as information that links her to her place of work. [Filing No. 37-1, at ECF p. 2.]  Plaintiff also argues that requiring her to disclose her actual name to litigate this case will require her to sustain the very injury this litigation seeks to prevent—the invasion of privacy that will occur if

the gender marker on her license does not match her gender identity.  [Filing No. 43, at ECF p 7]
(citing cases outside the Seventh Circuit supporting this argument).]

The Seventh Circuit has recognized that "[t]here is no denying that transgender
individuals face discrimination, harassment, and violence because of their gender identity."
*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017),
*abrogated on other grounds recognized by Illinois Repub. Party v. Pritzker*, 73 F.3d 760 (7th Cir.
2020).  Moreover, this Court has previously found (albeit, while applying the multifactor test the
Seventh Circuit has never adopted) that significant, statewide publicity could result in
substantial, legitimate fear of physical harm to outweigh the public's interest in knowing a
plaintiff's identity.  *See Does v. City of Indianapolis*, No. 1:06-cv-865-RLY-WTL, 2006 WL
2289187, at *2 ("Given the amount of media attention devoted to this case thus far, as well as the
public's attitude toward sex offenders in general, Plaintiffs' fears that they and their families
could be subject to physical harm as a result of participating in this lawsuit are legitimate.").

However, the specific facts in this case differ from those in other district court decisions
in the Seventh Circuit that found exceptional circumstances to justify allowing a plaintiff to
proceed anonymously.  For instance, in *Doe v. Board of Trustees of the University of Illinois*, No.
19-cv-1107, 2020 WL 13883397, at *2 (C.D. Ill. Apr. 13, 2020), the district court for the
Southern District of Illinois acknowledged that the plaintiff was transgender, and " '[a] number of
district courts have found that transgendered plaintiffs may proceed anonymously because of the
social stigma associated with non-conforming gender identities.' " (quoting *Doe v. United States*,
No. 16-cv-0640-SMY-DGW, 2016 WL 3476313, at *1 (S.D. Ill. June 27, 2016)).  That district
court went on to highlight that the plaintiff had "averred that she has received credible, in-person
threats of physical harm and death as a result of the events leading up to this litigation and the

litigation itself, and an allegation of fear of retaliation is often a compelling ground in favor of anonymity." *Id.* Thus, the Southern District of Illinois concluded, with that additional evidence, that the plaintiff's vulnerable status and alleged fear of physical harm and retaliation for the filing of the suit overcame the public's interest in knowing who is using the court system and who the parties to a case are. *Id.*

Similarly, in *Doe v. Pence*, No. 1:16-cv-02431-JMS-DML, 2016 WL 11578507, at *1 (S.D. Ind. Nov. 22, 2016), this Court found exceptional circumstances existed after the plaintiff presented evidence that "[p]olice officers [had] ridiculed him, detained him, and called him an 'it,' because of the incongruence between his given name and his physical appearance. Merchants have intentionally embarrassed him when he uses identification because of the contrast between his appearance and his female legal name." *Id.* This Court noted that "a pseudonym may be allowed when the plaintiff is unusually vulnerable in some way, such that revealing his identity may subject him to harm" and concluded that revealing the plaintiff's identity on the public docket "could spur retaliatory conduct from those with whom the plaintiff usually interacts." *Id.*

In contrast, the Plaintiff here has not presented any evidence of credible threats. Plaintiff has not presented any actual evidence of threats or concerns of specific harm. She raises only generalized fears, despite filing multiple declarations. [Filing No. 37-1; Filing No. 43-1; Filing No. 56-1.] The Court is not blind to the fact that transgender-related issues may spark volatile reactions. However, cases are routinely filed in this Court that bring forth emotion, passion, and strong feelings or otherwise involve issues that cause litigants to protect their privacy to the greatest extent possible. Many litigants would prefer to proceed anonymously, but a central tenant of our court system is that it is open and transparent to the public. *See, e.g., Doe v. Sheriff of DuPage County*, 128 F.3d 586, 587 (7th Cir. 1997) ("Litigation involves the public's business

and, except when exceptional circumstances are present, all parties to a suit must be identified."). General, speculative fear does not establish "exceptional circumstances" under controlling Seventh Circuit law. *See, e.g., Doe v. Trump*, No. 20-cv-2531, 2020 WL 8258737, at *1 (N.D. Ill. July 1, 2020) (denying motion to proceed under a pseudonym where a plaintiff, on behalf of the class, asserted that disclosing actual names posed harms due to the immigration issues involved, but supported the argument with only generalized fear of humiliation and harassment); *In re Boeing 737 MAX Pilots Litigation*, No. 1:19-cv-5008, 2020 WL 247404, at *3 (N.D. Ill. Jan. 16, 2020) ("A mere potential for retaliation, without more, is not enough to justify an extraordinary departure from public norms. If the fear of retaliation were enough, public disclosure would be the exception rather than the rule." (Internal citations omitted)).

In *Doe I v. Indiana University Bloomington*, No. 1:24-cv-01982-MPB-MG, 2025 WL 754523, at *2 (S.D. Ind. Mar. 10, 2025), this Court granted a plaintiff's request to proceed under pseudonymity due to her status as an alleged sexual assault victim. The Court reiterated that the Seventh Circuit has recently said a litigant may be justified to proceed under a pseudonym when they face a substantial risk of harm—either physical harm or retaliation by third parties. *Id.* The Court explained that "[w]hen considering whether a substantial risk of retaliatory harm exists, courts have considered (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fear; and (3) the anonymous party's vulnerability to such retaliation." *Id.* at *3.

The present case is different. There are no sexual assault allegations, nor does Plaintiff point to any current threat of harm. As noted above, while Plaintiff declares generally that she fears she will be subject to harassment or violence if her name is revealed publicly, she has not identified any actual threats she has received or provided any evidence beyond mere speculation

that a threat may occur in the future. *See, e.g., Koeckeritz v. Piece County*, No. 24-cv-903-JDP, 2025 WL 296446, at *2 (W.D. Wis. Jan. 24, 2025) ("Koeckeritz's concern about future retaliation is purely speculative, and there is a strong presumption in favor of open judicial proceedings."). *Cf. Doe v. Loyola Univ. Chicago*, 100 F.4th 910, 913 (7th Cir. 2024), *reh'g denied*, No. 22-2925, 2024 WL 2818036 (7th Cir. June 3, 2024) ("We observed in [*Doe v. Trustees of Indiana University*, 101 F.4th at 491-93,] that the sort of retaliation that might warrant secrecy is a kind that is unjustified by the facts—such as animus toward people with unpopular religious beliefs."). Moreover, Plaintiff has not requested an evidentiary hearing.

The parties spend a substantial portion of the briefing debating whether Plaintiff's disclosure of her transgender status on her Facebook page equates to public disclosure of her transgender status. Defendants argue that Plaintiff faces no harm because of this lawsuit because Plaintiff already publicly identifies herself as transgender. Defendants point out that Plaintiff's Facebook profile, which is easily found using her name, publicly discloses her transgender identity. In support, Defendants provide a declaration with screenshots from Plaintiff's Facebook page of accessible posts Plaintiff made identifying herself as transgender. Defendants also refer to a "Public Figure" fan page that Plaintiff has maintained for her drag queen identity since 2014. Defendants argue that "because Doe's transgender identity is already public, disclosing Doe's name in this lawsuit will not reveal any new information about Doe's transgender identity." [Filing No. 50, at ECF p. 8 (internal citation omitted).]

Plaintiff concedes that her Facebook page is theoretically accessible to anyone who goes searching for it but argues that her Facebook posts are likely to be viewed primarily if not exclusively by her self-selected audience of Facebook "friends." [Filing No. 56, at ECF p. 1.] She has only 267 friends on Facebook and argues that "[t]he State's decision to equate openly

identifying herself as transgender to a self-selected audience of (at most) 267 persons with outing herself as a plaintiff in a highly publicized federal lawsuit challenging a gubernatorial order that addresses an issue on which passions are already inflamed is obviously off-base." [Filing No. 56, at ECF p. 2.]  Plaintiff argues that currently, she is merely one of 30,000 transgender persons in Indiana, but if her name is attached to this litigation, she becomes the "posterchild" for transgender Hoosiers and a "lightning rod," which heightens her concerns of harassment, abuse, and violence.  [Filing No. 56, at ECF p. 2.] All these arguments need parsing out.

First, the fact that Plaintiff performed in drag shows or maintained a public figure page for her former drag persona has no bearing on her *transgender* status.  As pointed out in Plaintiff's reply, "drag" is a type of performance art; "transgender" reflects an individual's gender identity. [Filing No. 56, at ECF p. 10.]  They are not synonymous.  Thus, information on this separate page does not necessarily have anything to do with Plaintiff's transgender status or her desire to not to disclose her transgender status publicly.

Second, the Court generally would agree with Plaintiff that sharing information with 267 Facebook friends on an otherwise "private" Facebook account is not the same as broadcasting information for the public at large.  However, when someone broadens the audience on relevant posts from a Facebook page, arguments for privacy become more challenging.  The screenshots provided by Defendants indicate that the posts at issue were not protected and only available to Plaintiff's Facebook friends.  Rather, they have the "globe" icon, indicating that these posts are available for anyone to see.[2]  [Filing No. 50-1.]  Indeed, that is likely the only way Defendants

---

[2] *See, e.g., Owens v. Centene Corp.*, 20-CV-118 (EK), 2021 WL 878773 (E.D.N.Y. Mar. 9, 2021) ("Consistent with defense counsel's representation to the Court on November 19, 2020, the Facebook posting from May 10, 2015 (Bates-stamped D000078, DE #39-2 at ECF p. 4, and D000083, DE #39-2 at ECF p. 9) bears the Facebook globe icon, which signifies unequivocally that it is open to the public.  See Facebook Help Center, What does the little globe in the topic

were able to find these posts without "friending" Plaintiff.  A quick Google search and click of

Plaintiff's Facebook page allowed those posts to be seen by Defendants—and anyone else in the

world.  And some posts advocate for transgender issues and state, without question, that Plaintiff

is a transgender individual.  In addition, while Plaintiff argues that a lot of the posts found by

Defendants are dated, many are not.  Three posts specifically identifying Plaintiff as transgender

are from the last 12 months.  [Filing No. 50-1.]  Nevertheless, Plaintiff makes a valid point that

there is a distinction between access to posts on her Facebook page and disclosing her real name

on the public docket of a highly publicized federal lawsuit challenging a gubernatorial order.

Furthermore, the only way that someone would find her posts about being transgender and

connect them to this litigation is if her identity were revealed.

Accordingly, the fact that Plaintiff disclosed her transgender status on her Facebook page

is not outcome determinable here.  Rather, this decision turns on the fact that Plaintiff has failed

to present specific, concrete evidence of substantial harm that she will face if she cannot proceed

anonymously.  Thus, she has failed to demonstrate that the balance of harm justifies allowing her

to proceed anonymously.

Finally, the Court notes that this is a putative class action, meaning if the class is

certified, Doe (and L.A.) will be representing not just herself, but all others similarly situated.

Thus, as noted below, Plaintiff has an alternative option: Plaintiff may find another member of

the putative class willing be a named party to this lawsuit.

---

mean?, https://www.facebook.com/help/community/question/?id=10156887820690642 &
answer_id=10156887897265642 (visited March 4, 2021) ('The globe you are seeing is to show
that a post is public on Facebook.'); Facebook Help Center, What audiences can I choose from
when I share on Facebook?,
https://www.facebook.com/help/211513702214269?helpref=faq_content (visited March 4, 2021)
('Public: When you share something with Public that means anyone including people off
of Facebook can see it.')".

IV.    **Conclusion**

Accordingly, the Court denies Plaintiff's motion to proceed under the pseudonym of Jane

Doe.  [Filing No. 37.]  However, this is a class action, and a motion to certify the class is

presently pending.  Therefore, within 14 days, Plaintiff may choose to withdraw from this

lawsuit or identify another member of the putative class willing to come forward and be a party.

Otherwise, Plaintiff must file an amended complaint that uses her name within 14 days of this

order.

Finally, there are multiple motions to maintain documents under seal pending in this

matter.  [Filing No. 51; Filing No. 59; Filing No. 71; and Filing No. 74.]  Plaintiff has until

September 5, 2025, to file any amended responses to these pending motions considering this

order.[3]

Date: 7/23/2025

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

_____

[3] This aligns with the Court's July 16, 2025, order extending deadlines.  [Filing No. 76.]