# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| L. A., a minor child, by her parent, next friend, and legal guardian, Rai Eury; and JANE DOE; all plaintiffs on their own behalf and on behalf of a class of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MIKE BRAUN, in his official capacity as Governor of the State of Indiana; LARRY K. ERVIN, in his official capacity as State Registrar & Division Director of Vital Records of Indiana Department of Health, <br><br> Defendants. | No.: 1:25-cv-00596-MPB-TAB |

**DEFENDANTS' REPLY MEMORANDUM IN RESPONSE TO PLAINTIFFS' OPPOSITION TO MOTION TO EXCLUDE OPINIONS OF DR. JAMES D. FORTENBERRY, M.D., M.S.**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.    Whether Fortenberry Possesses General Qualifications As An Expert Says Nothing About the Reliability of His Methods in This Case ......................................... 1

    II.    Fortenberry's Challenged Opinions Should Be Excluded. ............................................ 7

        A.    Plaintiffs do not oppose exclusion of Fortenberry's undisclosed opinions on the Order's intent............................................................................ 7

        B.    Federal Rule of Evidence 702 and *Daubert* require exclusion of Fortenberry's other Challenged Opinions........................................................... 8

            1.    Fortenberry's EO Opinions should be excluded as unsupported and unreliable.................................................................................................. 8

            2.    Fortenberry's Gender Identity Opinions should be excluded as unsupported and unreliable ................................................................. 10

            3.    Fortenberry's Social Transition Opinions should be excluded as unsupported and unreliable ................................................................. 12

            4.    Fortenberry's Birth Certificate Opinions should be excluded as unsupported and unreliable ................................................................. 13

        C.    This Court should not ignore *Daubert*'s requirements, even on preliminary injunction..................................................................................... 15

    III.    Fortenberry's Challenged Opinions Should Receive No Weight. ............................... 15

CONCLUSION.................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*A. C. by M.C. v. Metro. Sch. Dist. of Martinsville*,
   601 F. Supp. 3d 345 (S.D. Ind. 2022) ............................................................................... 6

*A.M. by E.M. v. Indianapolis Pub. Schs.*,
   617 F. Supp. 3d 950 (S.D. Ind. 2022) ............................................................................... 6

*B.E. v. Vigo Cnty. Sch. Corp.*,
   608 F. Supp. 3d 725 (S.D. Ind. 2022) ............................................................................... 6

*Bos. Sci. Corp. v. Cook Med. LLC*,
   No. 1:17-cv-03448-JRS-MJD, 2023 WL 1476573 (S.D. Ind. Feb. 2, 2023) ..................... 8

*Ciomber v. Coop. Plus, Inc.*,
   527 F.3d 635 (7th Cir. 2008) ............................................................................................ 8

*Clark v. Takata Corp.*,
   192 F.3d 750 (7th Cir. 1999) ........................................................................................ 1, 2

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ........................................................................................ 2, 3

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................... 1, 8, 15

*J.A.W. v. Evansville Vanderburgh Sch. Corp.*,
   396 F. Supp. 3d 833 (S.D. Ind. 2019) ............................................................................... 6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .......................................................................................................... 2

*McDowell v. Brown*,
   392 F.3d 1283 (11th Cir. 2004) ........................................................................................ 2

*Metavante Corp. v. Emigrant Sav. Bank*,
   619 F.3d 748 (7th Cir. 2010) ........................................................................... 3, 4, 12, 15

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank*,
   877 F.2d 1333 (7th Cir. 1989) ........................................................................................ 15

*Minix v. Canarecci*,
   597 F.3d 824 (7th Cir. 2010) ........................................................................................ 3, 4

*New York v. United Parcel Serv., Inc.*,
   No. 15-cv-1136 (KBF), 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) .......................... 15

*Schultz v. Akzo Nobel Paints, LLC*,
   721 F.3d 426 (7th Cir. 2013) ............................................................................................ 1

*Smith v. Ill. Dep't of Transp.*,
　936 F.3d 554 (7th Cir. 2019) .................................................................................. 14

*United States v. Frazier*,
　387 F.3d 1244 (11th Cir. 2004) ................................................................................ 2

*United States v. Moshiri*,
　858 F.3d 1077 (7th Cir. 2017) ............................................................................. 3, 4

*United States v. W.R. Grace*,
　504 F.3d 745 (9th Cir. 2007) .................................................................................. 14

**Rules**

Fed. R. Evid. 702 ........................................................................................... 8, 14, 15

Fed. R. Evid. 702 advisory committee's note to 2000 amendments .......................... 3, 6

Fed. R. Evid. 703 ........................................................................................................ 14

**INTRODUCTION**

Plaintiffs offer no convincing reason to deny Defendants' motion to exclude Fortenberry's Challenged Opinions (the "Motion"). Instead, Plaintiffs point to Fortenberry's qualifications, which are irrelevant to Defendants' Motion. And to the extent Plaintiffs suggest Fortenberry's expertise renders his *methods* reliable, they are wrong. As the Seventh Circuit has cautioned, even a "supremely qualified expert cannot waltz into the courtroom and render opinions" if those opinions are not "based upon some recognized scientific method" or are not "reliable and relevant under the test set forth by the Supreme Court in *Daubert* [*v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ("*Daubert I*")]." *Clark v. Takata Corp.,* 192 F.3d 750, 759 n.5 (7th Cir. 1999). In other words, Fortenberry's qualifications do not exempt him from demonstrating how his professional experience led to his conclusions *here*—which he failed to do.

Moreover, Plaintiffs neither contradict Defendants' showing that Fortenberry cannot opine on the intent of Executive Order 25-36 (the "Order"), nor meet their burden to demonstrate that Fortenberry's conclusions are grounded in sufficient data and are the product of reliable methods, reliably applied. Indeed, rather than defending Fortenberry's methods, Plaintiffs argue that his sources are reliable. But this does not rebut Defendants' showing that Fortenberry fails to explain in his expert report *how* he reaches his conclusions based on his limited sources. And as the Seventh Circuit has instructed, "the key" to evaluating expert testimony is "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). Accordingly, this Court should exclude Fortenberry's Challenged Opinions.

**ARGUMENT**

**I.      Whether Fortenberry Possesses General Qualifications As An Expert Says Nothing About the Reliability of His Methods in This Case**

As a threshold matter, Plaintiffs' argument that Defendants "ignore[]" Fortenberry's "most important qualification"—his experience in treating persons with gender dysphoria—is beside the

point. *See* Dkt. 99 at 2–3[1] (Pls.' Resp.). Defendants do not challenge Fortenberry's *qualifications*. *See generally* Dkt. 73 (Defs.' Br.) (filed under seal). Rather, Defendants challenge certain of Fortenberry's opinions because they "do not have a sufficient basis and are not derived from the reliable application of reliable principles or methods." *See, e.g.*, *id.* at 8. And, contrary to Plaintiffs' assertions, *cf.* Dkt. 99 at 2–6, Fortenberry's personal experience does not provide a sufficient basis for his Challenged Opinions in this case, nor does it render them the product of reliable methods.

As the Supreme Court has cautioned, the party offering expert testimony must "make certain that [their] expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). And, as the Seventh Circuit has recognized, even a "supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Clark*, 192 F.3d at 759 n.5. Similarly, the Eleventh Circuit has explained that: "[s]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1315–16 (9th Cir. 1995) ("*Daubert II*")). Indeed, "[i]f admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). Plaintiffs thus cannot point

---

[1] Record citations are to the page number assigned by this Court's electronic-filing system, rather than any internal pagination.

2

to Fortenberry's qualifications to defend his methods. *Cf.* Dkt. 99 at 2–6.

And Plaintiffs' assertion that "[a]n expert's testimony is not unreliable simply because it is founded on his experience rather than on data," Dkt. 99 at 3 (quoting *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010)), is again beside the point. Even when an opinion is based on experience, the expert "cannot simply assert a 'bottom line'" but rather must "explain the 'methodologies and principles' that support his opinion." *Metavante Corp.*, 619 F.3d at 761–62 (quoting *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010)) (holding that expert who "manag[ed] a fifty-person development team" reliably testified as to "the usual business practice" because he "explained" how his experience connected to his conclusions). The Committee's Note to the 2000 Amendments of Rule 702 is instructive:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'

Fed. R. Evid. 702 advisory committee's note to 2000 amendments; *see also Daubert II*, 43 F.3d at 1316 (on remand) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and "the expert's bald assurance of validity is not enough"). In other words, no matter how experienced, the expert must still connect his experience to the case at hand.

And, contrary to Plaintiffs' suggestion, *cf.* Dkt. 99 at 3–4, the Seventh Circuit's decision in *United States v. Moshiri*, 858 F.3d 1077, 1084 (7th Cir. 2017), is consistent with that requirement. There, a doctor who "conducted approximately 60 on-site evaluations of podiatric residency programs" testified regarding the "typical stipend for teaching physicians in podiatric residency programs" and "the industry norms for such contracts." *Moshiri*, 858 F.3d at 1080, 1083–84. Further, the doctor explained the connection between his experience and his opinions—he "spoke with administrators regarding compensation for attending physicians" in conducting the

3

evaluations. *Id.* at 1084. Because the doctor "testified as to the standards within the industry as he had encountered them throughout his considerable personal experience," the Seventh Circuit determined that the district court did not abuse its discretion in finding that his testimony was the product of reliable methods. *Id.*

In contrast, Plaintiffs here make no effort to demonstrate how the specific conclusions that Fortenberry offers in this case are based on the application of his clinical experience. *See, e.g.*, Dkt. 99 at 5. For example, Defendants demonstrate that Fortenberry's conclusion that "chang[ing] one's birth certificate" to list gender identity "is essential for the mental and physical health of gender diverse persons[,]'" Dkt. 28-1 ¶ 61 (Fortenberry Expert Rep.), is not derived from the reliable application of his experience. *See* Dkt. 73 at 28–29. Indeed, Defendants show that Fortenberry "recalled only three instances [out of thousands] where a patient complained of distress caused by their birth certificate." *Id.* (citing Fortenberry Dep. at 35:20–36:14, 38:14–18 [Dkt. 96-5]). But Plaintiffs offer no response to this showing. *See* Dkt. 99 at 5, 9–10. And pointing to Fortenberry's assertion that "[his] clinical experience is notable for marked improvement in overall wellbeing associated with document revision as well as improved perceptions of safety[,]" Dkt. 28-1 ¶ 59, does not render his conclusion the product of reliable methods. That assertion is no more than the *ipse dixit* that Fortenberry's experience supports his conclusion. *See Metavante Corp.*, 619 F.3d at 761 (even where an expert's conclusion is based on his experience, he must "explain the 'methodologies and principles' that support his opinion" and "cannot simply assert a 'bottom line'" (quoting *Minix*, 597 F.3d at 835)). And the *details* of his experience—specifically, that only three patients of thousands complained of distress relating to birth certificates—were not disclosed in his expert report and cannot ground his conclusion that "being able to change one's

birth certificate . . . is essential for the mental and physical health of gender diverse person[s]." *Cf.* Dkt. 28-1 ¶ 61.

Similarly, Defendants challenge "Fortenberry's proffered testimony that 'an emerging body of scientific evidence supports a significant biological component' to gender identity" because he failed to explain how he reached that conclusion based on the single source that he cited. *See* Dkt. 73 at 13 (citing Dkt. 28-1 ¶ 24). And although Plaintiffs assert that Fortenberry's experience "alone entitles him to opine on these issues," *see* Dkt. 99 at 12, they do not show that Fortenberry's conclusion about the *causes* of gender identity reliably derives from his experience *treating* gender dysphoria. Nor could they, because Fortenberry did not even purport to ground this conclusion in his experience. *See* Dkt. 28-1 ¶ 24.

Likewise, Defendants show that Fortenberry's conclusion that "[s]ocial transition . . . is associated with . . . improved mental health after transition" is not the product of reliable methods because he did not explain how he extrapolated that broad conclusion from a single, limited source focused on prepubescent children. *See* Dkt. 73 at 16–17 (quoting Dkt. 28-1 ¶ 50). On this point, Plaintiffs generally invoke Fortenberry's "decades of experience" and cite to paragraph 49 of his expert report. *See* Dkt. 99 at 7 (citing Dkt. 28-1). But Fortenberry's assertion that "[s]ocial transition . . . is a critically important part of treatment," Dkt. 28-1 ¶ 49, is yet another conclusion—not an explanation of how his experience led him to his conclusions. Nor is Fortenberry's assertion that his conclusion is "consistent with [his] clinical observations of improved mental health associated with social transition," *id.* ¶ 50, enough to render it the product of reliable methods. Indeed, naked assertions that his experience is consistent with his conclusions are a far cry from the requirement to explain "how [his] experience leads to the conclusion reached,

5

why that experience is a sufficient basis for the opinion, [or] how that experience is reliably applied to the facts." *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

Plaintiffs also cannot rehabilitate Fortenberry's methods here by pointing to courts considering his testimony on *other* issues in *other* cases. *See* Dkt. 99 at 5–6. In one of those cases, the district court did not decide the State's motion to exclude on the merits because it "relie[d]" on Fortenberry's declaration *only* as to "basic background information" not disputed by the State's experts. *See A.M. by E.M. v. Indianapolis Pub. Schs.*, 617 F. Supp. 3d 950, 957 (S.D. Ind. 2022), *vacated for mootness*, No. 1:22-CV-01075-JMS-MKK, 2023 WL 11852464 (S.D. Ind. Jan. 19, 2023). In the other cases, Fortenberry submitted opinions relating to plaintiffs' bathroom use in school—a topic not at issue here. *See B.E. v. Vigo Cnty. Sch. Corp.*, 608 F. Supp. 3d 725, 733 & n.4 (S.D. Ind. 2022), *aff'd sub nom. A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 683 (2024); *A. C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 601 F. Supp. 3d 345, 350 (S.D. Ind. 2022), *aff'd*, 75 F.4th 760 (7th Cir. 2023), *cert. denied,* 144 S. Ct. 683 (2024); *J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 396 F. Supp. 3d 833, 837 n.3 (S.D. Ind. 2019). These cases thus are irrelevant to the reliability of his methods here.

Finally, Plaintiffs' confusion of the expert requirements of qualification and reliability extends to their flawed comparison of Fortenberry's experience to that of the State's experts Van Meter and Levine. *See* Dkt. 99 at 6. Plaintiffs do not move to exclude the opinions offered by the State's experts, *see id.*—and therefore do not seem to dispute that the State's experts *are* qualified to offer their rebuttals of Fortenberry's opinions. *See* Dkt. 66 ¶¶ 1–5, 16–28 (Levine Decl.) (Levine is a psychiatrist with over 50 years of experience in diagnosing and treating gender dysphoria, and is offering background information regarding gender identity issues and rebuttals to certain of Fortenberry's opinions); Dkt. 67 ¶¶ 1, 3 (Van Meter Decl.) (Van Meter is a board-certified

6

pediatric endocrinologist with over 30 years of experience, and is offering opinions on sex differences, disorders of sexual differentiation, and gender identity's lack of biological basis that differ from Fortenberry's opinions). Rather, Plaintiffs seem to suggest that, because the State's experts do not work in gender clinics focused on transitioning minors to the opposite sex, their opinions deserve less consideration than Fortenberry's in this case. *See* Dkt. 99 at 6. They provide no citation for that remarkable proposition and—tellingly—avoid engaging with the substance of the State's experts' critiques of Fortenberry's expert report. *See id.* Moreover, the fact that the State's experts have not made their life's work the transition of children to the opposite sex would suggest that they are more objective experts than Fortenberry, who has. Indeed, Plaintiffs offer no response to Defendants' showing of Fortenberry's bias on these issues. *See* Dkt. 73 at 6, 29.

In short, Plaintiffs cannot save Fortenberry's Challenged Opinions by pointing to his qualifications, which are not at issue.

## II. Fortenberry's Challenged Opinions Should Be Excluded.

Beyond that, Plaintiffs offer no serious response to Defendants' Motion.

### A. Plaintiffs do not oppose exclusion of Fortenberry's undisclosed opinions on the Order's intent.

To start, Plaintiffs do not even attempt to contest Defendants' showing that Federal Rules of Civil Procedure 26 and 37 require exclusion of Fortenberry's undisclosed EO Opinions regarding the intent of the Order. Dkt. 73 at 7–8. Instead, Plaintiffs assert in a footnote that Plaintiffs' counsel objected to Defendants' question about the scope of Fortenberry's offered opinions, *see* Fortenberry Dep. 110:19–111:4 [Dkt. 96-5]), and that this Court "can interpret for itself the intent of EO 25-36." Dkt. 99 at 3 n.3. Neither point challenges Defendants' showing. Accordingly, this Court should exclude Fortenberry's undisclosed EO Opinions regarding the

intent of the Order. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008) (exclusion of opinions not disclosed in expert report "is automatic and mandatory" (cleaned up)).

    **B.    Federal Rule of Evidence 702 and *Daubert* require exclusion of Fortenberry's other Challenged Opinions**

Plaintiffs' arguments regarding Fortenberry's reliance on various studies, Dkt. 99 at 6–14, fare no better. Neither does Plaintiffs' reliance, Dkt. 99 at 7, on this Court's decision in *Boston Scientific Corp. v. Cook Medical LLC*, No. 1:17-cv-03448-JRS-MJD, 2023 WL 1476573, at *12 (S.D. Ind. Feb. 2, 2023), to contend that Defendants' arguments go to weight, not admissibility. Indeed, the overarching issue is that Fortenberry repeatedly failed to explain in his expert report *how* he extrapolated his Challenged Opinions from the findings of the studies upon which he purported to rely. *See* Dkt. 73 at 10–29. This is an issue of Fortenberry's methodology, which goes to admissibility—not a disagreement regarding the correctness (or lack thereof) of Fortenberry's conclusion, which would go to weight. *Cf. Bos. Sci. Corp.*, 2023 WL 1476573, at *12.[2]

    **1.    Fortenberry's EO Opinions should be excluded as unsupported and unreliable**

Plaintiffs fail to rebut Defendants' showing that Fortenberry's conclusions that the Order's definition of "sex" is inaccurate are unsupported and not reliably derived from reliable methods. *See* Dkt. 73 at 13–15; *cf.* Dkt. 99 at 10–11. Again, Plaintiffs point generally to Fortenberry's experience, *see* Dkt. 99 at 10, but his expert report did not even purport to rely on his experience to support this conclusion, let alone identify specific experience or connect that to the conclusion he reached. *See* Dkt. 28-1 ¶¶ 2, 17–23 (EO Opinions).

Plaintiffs also fail to address Defendants' showing that Fortenberry ignores expert consensus on the issue—"which is that all individuals with DSD [disorders of sexual

---

    [2] In the alternative, Defendants also argue that Fortenberry's Challenged Opinions merit no weight. *See* Dkt. 73 at 29–32.

differentiation] should be identified as male or female, rather than not identified by sex or identified as something else." *See* Dkt. 73 at 12–13 (citing 2006 Consensus Statement). Instead, Plaintiffs point to the existence of DSDs to somehow support Fortenberry's criticism of the Order's "reliance on an immutable categorization as male or female." *See* Dkt. 99 at 11 (quoting Dkt. 28-1 ¶ 19). But Fortenberry never identified any DSD suggesting that sex is anything but "immutable" or categorized as anything other than "male or female." *See generally* Dkt. 28-1.

And Plaintiffs do not contradict Defendants' showing that Fortenberry relies on an insufficient source regarding the incidence rate of disorders of DSDs that "has not been subjected to peer review, does not identify its authors, does not identify how it calculated its estimates, and does not even define 'DSD traits.'" Dkt. 73 at 10–11 (discussing the "UN Campaign"). Instead, Plaintiffs try to sidestep this point by arguing that Fortenberry relied on that source only to show that DSDs "do in fact exist", Dkt. 99 at 10—a fact not in dispute. And contrary to Plaintiffs' suggestion, *cf. id.* at 11, incidence rate matters because Fortenberry suggests that DSDs provide an "*important* limitation[]" to the Order's definition of sex. Dkt. 28-1 ¶ 18 (emphasis added).

Moreover, as the State's expert endocrinologist Van Meter testified, "bringing in the DSDs as a broader category with larger numbers is sort of a straw man." Dkt. 96-1 (Van Meter Dep.) 99:16–18. And Plaintiffs do not dispute that, for the vast majority of DSDs, "it is simple and straightforward to recognize the patient's sex in line with current pediatric endocrine standards." Dkt. 67 ¶ 30. To be sure, Van Meter acknowledged that there are "extremely rare exceptions" where someone with a particular type of DSD may not precisely fit the Order's definition of sex.[3] *See* Dkt. 96-1 (Van Meter Dep.) 99:5. But Van Meter's acknowledgment does not provide support

---

[3] Plaintiffs here do not allege that *they* have any DSD, such that the Order's definition is anything less than fully accurate with respect to them. *See* Dkt. 73 at 30.

for *Fortenberry's* EO Opinions, which were not supported by sufficient explanation between the underlying facts and the conclusion reached. *See* Dkt. 73 at 11–12. Indeed, Van Meter also testified that the definition "cover[s] 99.99 percent of the residents" of Indiana and is "as tight a . . . definition as you can make." Dkt. 96-1 (Van Meter Dep.) 99:13–16. Accordingly, Fortenberry's opinions about the accuracy of the Order's definition of "sex" should be excluded as unsupported and not the product of reliable methods.

### 2. Fortenberry's Gender Identity Opinions should be excluded as unsupported and unreliable

Plaintiffs also fail to rebut Defendants' showing that Fortenberry's conclusions regarding the causes and characteristics of gender identity are unsupported and not the product of reliable methods. *See* Dkt. 73 at 13–15; *cf.* Dkt. 99 at 11–14. Again, Plaintiffs cannot rely on Fortenberry's experience here, because Fortenberry's expert report did not refer to his experience as a basis for these conclusions. *See* Dkt. 28-1 ¶¶ 24–28 ("Gender Identity Opinions"); *see also supra* at 5.

Moreover, Defendants did not "put[] words in Dr. Fortenberry's mouth" or otherwise "argu[e]" that Fortenberry "believes gender identity was 'genetically determined.'" *Cf.* Dkt. 99 at 13. Rather, Defendants argued that the Polderman 2018 Review on which Fortenberry relied "found significant variation" in identical twin studies, which was contrary to expectations "[i]f gender identity were genetically determined." *See* Dkt. 73 at 13. This variation in findings undercut Fortenberry's conclusion that the source provided support for "an emerging body of scientific evidence support[ing] a significant biological component" to gender identity. *Cf.* Dkt. 28-1 ¶ 24. In other words, Fortenberry ignored the limitations of and inconsistencies in the single source on which he relied, where that source contradicted his conclusion. *See* Dkt. 73 at 13–14.

Likewise, Plaintiffs misrepresent Van Meter's deposition testimony on this point. *See* Dkt. 99 at 13. Contrary to Plaintiffs' assertion, Van Meter agreed only that Plaintiffs' counsel correctly

*read* a sentence from the Polderman 2018 Review. *See* Dkt. 96-1 (Van Meter Dep.) 67:11–68:2. He did *not* agree that the sentence accurately captured the findings of the review—rather, he testified that the conclusion was "kind of a surprise" and "a little off" because it contradicted the review's own prior findings. *See id.* at 68:3–18. Indeed, the Polderman 2018 Review states that "studies in children are scarce and the findings thus far are conflicting," "no conclusive associations have been identified," and the "inconclusive results" are based on "small sample sizes and focus on individual genes." Dkt. 72-1 at 91–92 (Freudenberg Decl. Ex. G).

And Plaintiffs cannot point to studies that Fortenberry did not cite to rehabilitate his unsound methodology. *Compare* Dkt. 99 at 14 (discussing studies by Karamanis and Heylens) *with* Dkt. 28-1 ¶¶ 24–28 (no mention of those studies). In any event, the studies that Van Meter cited in *his* expert report do not provide any support for Fortenberry's conclusions, but rather are examples of "the wide variety of results seen in twin studies." Dkt. 67 ¶ 44 & nn.27–28. That one study speculated that an unexpected finding of a higher rate of concordant transgender identification in opposite-sex twin pairs compared to identical twins was the result of intrauterine hormone transfer is just that—speculation. *See* Dkt. 96-1 (Van Meter Dep.) 87:22–89:12. And, as Van Meter clarified at his deposition, it is the lack of "consistency" among such studies that suggests gender identity is "not genetic." *Id.* at 91:6–19.

In response to Defendants' contention that Fortenberry failed to support his opinion that a "substantial proportion of youth" are gender diverse, Dkt. 73 at 14 (citing Dkt. 28-1 ¶ 27), Plaintiffs suggest that 0.6% can be "substantial," Dkt. 99 at 12–13. But Defendants respectfully suggest that this Court follow Plaintiffs' invitation to "draw its own conclusions" and "ignore Dr. Fortenberry's characterization" of such an incidence rate as "substantial." Dkt. 99 at 12.

Finally, Plaintiffs do not respond to Defendants' showing that Fortenberry fails to explain

11

*how* he reached the conclusion that "gender identity 'is not a personal decision, preference, or belief and cannot be altered.'" *See* Dkt. 73 at 14 (citing Dkt. 28-1 at ¶ 28). Nor do they respond to the point that Fortenberry failed to "reconcile[]" his conclusion "with the existence of persons whose gender identities have changed—such as those who have desisted or detransitioned." *See id.* at 14–15. Accordingly, Fortenberry's Gender Identity Opinions should be excluded.

### 3. Fortenberry's Social Transition Opinions should be excluded as unsupported and unreliable

Plaintiffs again attempt to rely on Fortenberry's experience as the basis for his conclusions regarding the purported benefits of social transition, *see* Dkt. 99 at 7—and again, Fortenberry's expert report failed to connect his experience to the conclusions offered. *See* Dkt. 28-1 ¶¶ 33–50 (the "Social Transition Opinions"). A one-sentence assertion that his conclusions are "consistent with [his] clinical observations," *id.* ¶ 50, is not enough to render those conclusions the product of reliable methods. *See Metavante Corp.*, 619 F.3d at 761 (expert must "explain the 'methodologies and principles' that support his opinion" (citation omitted)); *see also supra* at 5–6.

Instead, Fortenberry purported to ground his Social Transition Opinions in the WPATH standards and two studies involving prepubescent children. *See* Dkt. 28-1 ¶¶ 33–50. But Plaintiffs do not dispute that the U.S. Department of Health and Human Services and 27 state legislatures have rejected the WPATH standards on which Fortenberry relies. *See* Dkt. 73 at 15. Rather, Plaintiffs attempt to dismiss this emerging consensus as "primarily" political, *see* Dkt. 99 at 7, ignoring the 2025 HHS Report rating the WPATH standards as "among the lowest in quality" and noting that they "have not been recommended for implementation by systematic reviews." Dkt. 72-1 at 245 (Freudenberg Decl. Ex. H).

And Plaintiffs' showing that the Olson 2016 and Durwood 2024 Studies are "valid and useful for forming an opinion[,]" Dkt. 99 at 8, misses the point. Defendants contended that

Fortenberry failed to explain how he extrapolated broad, generalized conclusions about *all* social transition from studies limited to prepubescent children. *See* Dkt. 73 at 16–17. But Plaintiffs—like Fortenberry—provide no explanation, *cf.* Dkt. 99 at 8, a fatal error to any sound methodology given the studies themselves caution readers about their limitations. *See* Dkt. 73 at 16–17.

Moreover, Plaintiffs' only response to Defendants' contention that a systematic review found that "[t]here is limited, low-quality evidence on the impact of social transition for children and adolescents experiencing gender dysphoria/incongruence," Dkt. 73 at 17, is to quibble about the meaning of "low-quality" and argue that the issue presents an issue for dueling experts. Dkt. 99 at 8–9. But the shortcomings in Fortenberry's *methodology*—including cherry-picking two limited studies and ignoring scientific literature to the contrary, *see* Dkt. 73 at 17—are issues of admissibility, not weight. Accordingly, the Social Transition Opinions should be excluded.

### 4. Fortenberry's Birth Certificate Opinions should be excluded as unsupported and unreliable

Fortenberry testified that causation between sex marker changes and mental health impacts "is not only unproven, but practically unprovable," and that he has "no evidence" that not changing the sex listed on birth certificates "causes any of the harms or distresses associated with gender diversity." Dkt. 73 at 18–19 (quoting Fortenberry Dep. at 95:9–14, 139:10–15 [Dkt. 96-5]). Fortenberry's own words are therefore Plaintiffs biggest hurdle in their efforts to rehabilitate the methodology underlying his conclusions that listing sex on birth certificates impacts mental health. *See* Dkt. 28-1 ¶¶ 2, 54–61 (the "Birth Certificate Opinions"). And Plaintiffs apparently have no response to Defendants' contention that Fortenberry's admissions show that his "assumptions of causation" are unsupported speculation. Dkt. 73 at 18–19.

Instead, Plaintiffs argue that Defendants "do not contend that Dr. Fortenberry erred in his description of the studies." Dkt. 99 at 9. But Plaintiffs ignore Defendants' showings that

13

Fortenberry omitted reference to important limitations of the Document Revision Studies, *see* Dkt. 73 at 22–28—which Defendants consider "err[ing] in his description of the studies." *Cf.* Dkt. 99 at 9. At the least, Fortenberry relied on an "anemic and one-sided" description of the studies. *See Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 558–59 (7th Cir. 2019) (holding that expert's "reliance on an anemic and one-sided set of facts casts significant doubt on the soundness of her opinion").

Moreover, Plaintiffs' reliance on the Ninth Circuit's decision in *United States v. W.R. Grace*, 504 F.3d 745, 765 (9th Cir. 2007), to support Fortenberry basing his causation opinions on associational studies, Dkt. 99 at 9, is misguided. Indeed, Plaintiffs omit the full quotation:

> [T]he fact that a study is associational—rather than an epidemiological study intended to show causation—does not bar it from being used to inform an expert's opinion about the dangers of asbestos releases, assuming the study is 'of the type typically relied upon' by experts in the field. Of course, the expert's opinion testimony must satisfy the requirements of Rule 702—but that requires consideration of the *overall* sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case.

*W.R. Grace*, 504 F.3d at 765 (citing Fed. R. Evid. 702–03). Here, Plaintiffs have failed to meet their burden to demonstrate "the *overall* sufficiency of the underlying facts and data, and the reliability of the methods, as well as the fit of the methods to the facts of the case." *See id.* (citing Fed. R. Evid. 702). That Fortenberry relied on associational studies precluding causal inferences to *make* causal inferences is just one of many deficiencies in his methods. *See* Dkt. 73 at 19–29.

Likewise, Plaintiffs cannot rehabilitate Fortenberry's methodology by noting the *absence* of studies showing that changing sex markers on identity documents causes harm. *Cf.* Dkt. 99 at 10. Indeed, the absence of such studies does not support Fortenberry's conclusion that not allowing document revisions poses a "severe risk of harm" or "violates the[] autonomy and privacy and endangers the[] health and wellbeing" of persons seeking such revisions. *Cf.* Dkt. 28-1 ¶¶ 2, 59.

Finally, Plaintiffs cannot render Fortenberry's conclusions the product of reliable methods by referencing his experience. *Cf.* Dkt. 99 at 9–10; *see supra* at 4–5. Accordingly, Fortenberry's

Birth Certificate Opinions should be excluded.

C. **This Court should not ignore *Daubert*'s requirements, even on preliminary injunction**

Plaintiffs' suggestion that this Court should admit Fortenberry's opinions without a *Daubert* analysis, *see* Dkt. 99 at 2, is not the law in this circuit. In contrast, the Seventh Circuit has instructed that "*Daubert's* requirements of reliability and relevancy continue to apply in a bench trial." *Metavante Corp.*, 619 F.3d at 760 (citations omitted). And as another district court has explained, even in a bench trial there are "obvious efficiency gains in precluding testimony from an individual . . . who is providing testimony that is plainly irrelevant or, if relevant, is based upon unreliable methods." *New York v. United Parcel Serv., Inc.*, No. 15-cv-1136 (KBF), 2016 WL 4735368, at *1 (S.D.N.Y. Sept. 10, 2016). Indeed, weighing "[s]uch testimony is a waste of everyone's time[,]" *id.*, because Fortenberry "supplies nothing but a bottom line" and therefore "supplies nothing of value to the judicial process." *See Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989).

III. **Fortenberry's Challenged Opinions Should Receive No Weight.**

Even if Fortenberry's Challenged Opinions are not excluded, they should receive no weight. *See* Dkt. 73 at 29–32. Indeed, Plaintiffs do not dispute that Fortenberry's "one-sided presentation of the evidence raises significant questions of bias." *Id.* at 29.

## CONCLUSION

To the extent they have responded at all, Plaintiffs have offered no serious response to the reasons Defendants seek to exclude Dr. Fortenberry's opinions. Those opinions fail the fundamental requirement under Rule 702 and *Daubert* that even a very qualified expert must connect the dots between his experience and the opinions he seeks to offer. This Court should grant Defendants' Motion to Exclude Fortenberry's Challenged Opinions.

Dated: September 12, 2025          Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General

By:   James A. Barta
      Solicitor General
      Jenna M. Lorence
      Deputy Solicitor General
      Katelyn E. Doering
      Deputy Attorney General
      OFFICE OF THE ATTORNEY GENERAL
      302 W. Washington Street
      IGCS 5th Floor
      Indianapolis, IN 46204-2770
      Telephone: (317) 232-0709
      Facsimile: (317) 232-7979
      Email: James.Barta@atg.in.gov

      /s/ Gene C. Schaerr
      Gene C. Schaerr*
      Stephanie L. Freudenberg*
      Justin A. Miller*
      SCHAERR | JAFFE LLP
      1717 K Street NW, Suite 900
      Washington, DC 20006
      Telephone: (202) 787-1060

      *Admitted *pro hac vice*

      *Counsel for Defendants*